UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MELISSA WHITE and ROGER WHITE,<br><br>Plaintiffs,<br><br>v.<br><br>KING COUNTY SHERIFF'S OFFICE et al.,<br><br>Defendants. | CASE NO. 2:23-cv-01761-JHC<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS |

# I
## INTRODUCTION

This matter comes before the Court on Defendants' Motion to Dismiss.  Dkt. # 42.  Officers of the King County Sheriff's Office (King County) drove onto the private property of Melissa and Roger White (the Whites) late at night and arrested their son, Killian White.  The Whites allege that King County and its officers violated federal and state laws by entering their property without their consent.  Defendants seek dismissal under Federal Rule of Civil Procedure 12(c), contending that the Whites fail to state a claim upon which relief can be granted.  Dkt. # 42.  The Court has reviewed the materials filed in support of and in opposition to the motion, the rest of the case file, and the governing law.  Being fully advised, the Court GRANTS

in part and DENIES in part the motion. And the Court GRANTS the Whites leave to file an amended complaint consistent with this order.

## II
### BACKGROUND

The Court takes as true the facts alleged in the amended complaint. Dkt. # 29. At about 2:00 a.m. on February 7, 2021, Defendants approached the Whites' property seeking to arrest their son Killian White for domestic violence charges under RCW 10.31.100(2)(d).[1] Dkt. # 29 at 5, ¶¶ 34–35; *id.* at 15, ¶¶ 95–96. The Whites live in a gated community with Killian. Dkt. # 29 at 4–5, ¶¶ 18–28. For privacy, the Whites live in a secluded part of the gated community. A visitor to the Whites' property must enter the gated community and drive a mile to the end of a private road. *Id.* at 4–5, ¶¶ 21–22, 34. At the end of the road is a gate with a "Private Property" sign that marks the beginning of a 600-foot path leading to the Whites' home. *Id.* at 5, ¶ 34; *id.* at 44 (Exhibit D-2). The home is not visible from the beginning of the 600-foot path because of dense foliage surrounding the property. Dkt. # 29 at 48–57 (Exhibits F–H).

Without a warrant, Defendants "bypass[ed]" the gate,[2] drove up the path, and parked somewhere near the Whites' home. *Id.* at 5, ¶ 34. Officer Jeffrey Petrenchak[3] "inquir[ed] [into]

---

[1] Defendants say that they "had a mandatory obligation to contact and arrest Killian White for domestic violence charges," and the Whites acknowledge that "Defendants [*sic*] sole purpose to trespass and conduct an unreasonable search was to arrest Killian White pursuant to RCW 10.31.100(2) and (2)(d)." Dkt. ## 43 at 11; 54 at 1. Under RCW 10.99.030(2)(a), an officer responding to a domestic violence call who "has probable cause to believe that a crime has been committed" must exercise arrest powers according to RCW 10.31.100. And under RCW 10.31.100(2)(d), an officer "shall arrest and take into custody . . . a person without a warrant when the officer has probable cause to believe that . . . [t]he person is eighteen years or older and within the preceding four hours has assaulted a family or household member or intimate partner," among other factors.

[2] Defendants point out that the Whites "do not allege the gate was closed on the night in question." Dkt. # 42 at 6. In their amended complaint, the Whites allege that Defendants "bypass[ed] the gate" and repeat this characterization in their response. Dkt. ## 29 at 5, ¶ 34; 43 at 9.

[3] Although the complaint states, "Jeffery Patrick," this appears to be a typographical error. *Compare* Dkt. # 29 at 6, ¶ 50 *with* Dkt. # 43 at 7.

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION TO DISMISS - 2

the ownership" of the Whites' truck by presumably searching records for its license plate number.  *Id.* at 6, ¶¶ 50–51.  Defendants called Killian on his cell phone and ordered him to come outside the home.  *Id.* at 5, ¶¶ 37–38.  After Killian came outside, Defendants arrested him.  *Id.* at 5–6, ¶¶ 39–40.  The Whites woke up the next morning and did not know where Killian was until he called them from the King County Jail.  *Id.* at 6, ¶¶ 44–48.

The Court has taken judicial notice of court records showing that Killian was arrested for and pleaded guilty to two gross misdemeanor counts: (1) assault in the fourth degree – domestic violence (intimate partner); and (2) assault in the fourth degree.  Dkt. # 40 at 2 n.1.  The Court does not take judicial notice of any events relating to Killian's arrest that occurred before the facts alleged in the amended complaint.

The Whites filed an amended complaint against King County and officers Tyler Hunt, Jeffrey Petrenchak, Enrico Donaglia, Steven Minters, and Mitzi Johanknecht, in both their individual and official capacities.  Dkt. # 29 at 1–2.  The Whites assert: (1) a 42 U.S.C. Section 1983 claim, alleging violations of the Fourth, Fifth, and Fourteenth Amendments; (2) a 42 U.S.C. Section 1985 claim; (3) a conspiracy claim; and (4) a negligence claim.  *Id.* at 16–30.  The Whites also request empanelment of a grand jury.  *Id.* at 8–9.  The Whites seek declaratory relief, damages, and costs.  *Id.* at 30–31, ¶¶ 225–29.  Killian is not a party to this case and the Whites have amended their complaint to remove any claims relating to Killian's arrest.  Dkt. # 31.  Killian brings his claims in a separate lawsuit, and the parties have not moved for consolidation of the two cases.  Dkt. # 60–62.

### III
### DISCUSSION

The standards for deciding a Federal Rule of Civil Procedure 12(b)(6) motion and a Rule 12(c) motion are "functionally identical."  *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,

637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (citation omitted). In reviewing a motion to dismiss under Rule 12(c), the Court takes all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the non-moving party. *Hines v. Youseff*, 914 F.3d 1218, 1227 (9th Cir. 2019). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that [they are] entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990). Complaints drafted by parties proceeding *pro se* are "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

A.   Section 1983 Claims (Counts I–III)

The Whites state a Section 1983 claim against the Defendant officers but not against King County. The Whites bring Section 1983 claims under the Fourth, Fifth, and Fourteenth Amendments. The Court addresses only the Fourth Amendment claim because the Fifth Amendment applies solely to the federal government, *see Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008), and the Fourteenth Amendment claim is based on that amendment's incorporation of the Fourth Amendment against the States.[4] Dkt. # 29 at 16–21, ¶¶ 102–38. The Court concludes that the Defendant officers are not entitled to qualified immunity and that the Whites have not adequately alleged that King County is subject to liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

---

[4] In their response, the Whites do not dispute Defendants' statement that they do not allege any Fourteenth Amendment claim separate from their Fourth Amendment claim. Dkt. ## 42 at 5 n.1; 43 at 4, 13 (only asserting Fourth Amendment violations).

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION TO DISMISS - 4

1.      Qualified immunity

The Defendant officers are not entitled to qualified immunity at this stage. "At the motion to dismiss stage, dismissal is not appropriate unless [the court] can determine, based on the complaint itself, that qualified immunity applies." *Polanco v. Diaz*, 76 F.4th 918, 925 (9th Cir. 2023) (quotation marks and citation omitted). An officer is entitled to qualified immunity if either of these criteria is satisfied: (i) the alleged facts do not show a constitutional violation; or (ii) the constitutional right allegedly violated was not "clearly established" at the time of the events at issue. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). Neither criterion is met here.

a.      Fourth Amendment violation

The Whites adequately allege a Fourth Amendment violation. The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend IV. The Fourth Amendment protects the area "immediately surrounding and associated with the home," also known as the curtilage. *Florida v. Jardines*, 569 U.S. 1, 6 (2013) (quoting *Oliver v. United States*, 466 U.S. 170, 180 (1984)). The Defendant officers assert that they constitutionally entered the Whites' property without a warrant at 2:00 a.m. under the "knock and talk" exception, which allows officers to enter the curtilage of a home "for the purpose of asking questions of the occupants." *United States v. Lundin*, 817 F.3d 1151, 1158 (9th Cir. 2016) (quoting *United States v. Perea-Rey*, 680 F.3d 1179, 1187 (9th Cir. 2012)); Dkt. # 42 at 5.

As an initial matter, it is unclear if the Defendant officers concede that they entered the curtilage of the Whites' home. In their motion to dismiss, the Defendant officers acknowledge that "the driveway is within the curtilage of the home" and focus on the applicability of the "knock and talk" exception. Dkt. # 42 at 5–7. Based on the Whites' allegations, the Court

interprets "driveway" to mean the immediate driveway in front of the house and not the 600-foot path.[5] Dkt. # 29 at 5, ¶ 34. But in their supplemental brief,[6] the Defendant officers contend that it was not "clearly established" that the driveway is within the curtilage of the home. Dkt. # 54 at 3. They do not reiterate that there was no Fourth Amendment violation. *Id.*

In any event, the Whites sufficiently allege that the Defendant officers entered the curtilage of their home. The curtilage is "an area adjacent to the home and 'to which the activity of home life extends.'" *Jardines*, 569 U.S. at 7 (quoting *Oliver*, 466 U.S. at 182 n.12). In *United States v. Dunn*, the Supreme Court set forth four factors to determine whether an area is within a home's curtilage: (1) "the proximity of the area" to the home; (2) "whether the area is included within an enclosure surrounding the home"; (3) "the uses to which the area is put"; and (4) "the steps taken by the resident to protect the area from observation by people passing by." 480 U.S. 294, 301 (1987). These factors are "useful analytical tools" and need not be strictly satisfied. *Id.*

The Whites do not specifically allege where the Defendant officers parked or where the Whites' truck was parked when Officer Petrenchak inquired into its ownership by searching records for its license plate number. But the Whites provide photographs showing what they mean when they allege that the Defendant officers entered the "curtilage" of their home. Dkt. # 29 at 52–57 (Exhibits G–H). The Whites also allege that the "curtilage" is the area at the end of the 600-foot path covering about 122 feet from their front porch to the northern property line and about 8–16.5 feet from the "side deck/fire pit" to the eastern bank. *Id.* at 13, ¶ 89. This area, which is enclosed by dense foliage and a fence on one side, includes two garages, a front

---

[5] The Defendant officers also acknowledge that they stood "outside in the driveway, quite a few feet from the house." Dkt. # 42 at 7 (citing Dkt. # 29 at 54 (Exhibit G-4)).

[6] The Court ordered the parties to provide supplemental briefing to address *Lundin*, 817 F.3d 1151, and the application of RCW § 10.99.030 and RCW § 10.31.100. Dkt. # 53.

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION TO DISMISS - 6

yard, and a fire pit. *Id.* at 13–14, ¶¶ 89–90. The Whites use this area for parking and working on cars as well as for hosting barbecues and large gatherings. *Id.* at 14, ¶ 91.

Although the entirety of this area may not be proximate enough to the home, the second and fourth *Dunn* factors weigh strongly in the Whites' favor. This area is not only enclosed by dense foliage and a fence on one side but is also set off from the road by a 600-foot path. *See Perea-Rey*, 680 F.3d at 1184–85 (applying the *Dunn* factors to hold that an area was within the curtilage of the home in part because it was enclosed by a fence and obscured from view). And drawing inferences in the Whites' favor, the Court concludes that the area could be used for activities that are "intimately tied to the home." *Dunn*, 480 U.S. at 301. The Defendant officers cite *United States v. Carloss*, an out-of-circuit case, but it is not on point because the home in that case was not set off from the road by a long path. 818 F.3d 988, 995 (10th Cir. 2016). Moreover, the curtilage issue was not squarely presented because Carloss did not claim that his unenclosed front and side yards and driveway were part of his home's curtilage. *Id.* Based on the *Dunn* factors, it is plausible that the Defendant officers entered the curtilage of the Whites' home.

The question, then, is whether the Defendant officers' entering the curtilage of the Whites' home is constitutional under the "knock and talk" exception. The Court concludes that the "knock and talk" exception does not apply for both reasons set forth in *Lundin*, 817 F.3d 1151. The "knock and talk" exception does not apply when officers enter the curtilage of a resident's home outside of normal waking hours and no evidence suggests that the resident regularly accepts visitors at that time. *Id.* at 1159. The Whites allege that they do not regularly expect a "door sales person" or someone delivering an Amazon package to knock on their door at 2:00 a.m. Dkt. # 29 at 4, 19 ¶¶ 20, 120. The "knock and talk" exception also does not apply when, as here, "officers encroach upon the curtilage of a home with the intent to arrest the

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION TO DISMISS - 7

occupant."[7] *Id.* at 1160.  To the extent that the Defendant officers rely on *Carloss* to assert that the "knock and talk" exception applies, that case is distinguishable because there the officers knocked on the door in the afternoon with the intent to ask questions.  818 F.3d at 990.  Because the Whites adequately allege that the Defendant officers unconstitutionally entered the curtilage of their home, they also state a claim that the Defendant officers unconstitutionally inquired into the ownership of their truck.  *See Collins v. Virginia*, 584 U.S. 586, 595 (2018) ("A plain-view seizure [] cannot be justified if it is effectuated 'by unlawful trespass.'") (citation omitted).

                b.        "Clearly established" law

The law clearly established that entering the curtilage of the Whites' home would violate the Fourth Amendment.  The Defendant officers concede that "[i]f the officers had walked to the front door and knocked . . . *Lundin* would be on point."  Dkt. # 54 at 4.  But they assert that unlike the officers in *Lundin*, they only approached the driveway of the home rather than the front porch.[8]  The Defendant officers say that it was not clearly established that a driveway is part of the curtilage of a home.  *Id.* at 3–4.

But there need not be "a case directly on point for a right to be clearly established" if precedent "placed the statutory or constitutional question beyond debate."  *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam) (citation omitted).  The Supreme Court has held that at common law, the curtilage was defined "by reference to the factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will

---

[7] It may or may not be significant that although the Defendant officers approached the home with the intent to arrest Killian, they did not have such an intent toward the Whites.  But because the Defendant officers do not meaningfully raise this issue, the Court does not consider it.

[8] The Defendant officers also say that it was not clearly established that there was no implied license to use the Whites' driveway in the middle of the night.  Dkt. # 54 at 3.  But *Lundin* clearly established that there is no implied license where, as here, nothing suggests that the resident expects visitors at the time of day that the officers entered the curtilage of their home.  817 F.3d at 1159.

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION TO DISMISS - 8

remain private." *Chong v. United States*, 112 F.4th 848, 856 (9th Cir. 2024) (quoting *Oliver*, 466 U.S. at 180).  The "driveway" here is set apart from the road by a 600-foot path and is surrounded by dense foliage and a fence on one side.  Under the *Dunn* factors and their application in *Perea-Rey*, it was clearly established that the area was within the curtilage of the Whites' home.  The purpose of qualified immunity is to give officers "breathing room to make reasonable but mistaken judgments." *City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 611 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).  Accepting the Whites' allegations as true, and drawing inferences in their favor, the Court determines that no reasonable officer would have assumed that turning off a road, bypassing a gate marked with a "Private Property" sign, and driving up a 600-foot path surrounded by trees to a driveway would not be an intrusion into the curtilage of a home.  The Defendant officers cite *Yarofalchuw v. Cabrera (Yarofalchuw II)*, in which the Ninth Circuit held in an unpublished decision that it was not clearly established that arresting someone "between the hedges at the end of his driveway would constitute an arrest within the curtilage of his home."  2024 WL 1007685, at *1 (9th Cir. Mar. 8, 2024).  But in *Yarofalchuw v. Cabrera (Yarofalchuw I)*, the end of the driveway was the road rather than the beginning of a 600-foot path to the road.  2023 WL 5204490, at *2 (D. N. Mar. I. Aug. 14, 2023), *aff'd*, *Yarofalchuw II*, 2024 WL 1007685.  To be sure, if the Defendant officers had not entered the driveway of the Whites' residence and instead parked at the end of the 600-foot path, this case might be more like *Yarofalchuw II*.  But because the Whites allege that the Defendant officers drove to the end of the 600-foot path and entered their driveway, *Yarofalchuw II* is distinguishable.  Dkt. # 29 at 5, ¶ 34.

The Defendant officers also contend that the law was not clearly established because RCW 10.31.100(2)(d) required them to arrest Killian within four hours.  Dkt. # 54 at 5–6.  The Defendant officers suggest that their decision to call Killian on his cell phone and arrest him in

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION TO DISMISS - 9

the driveway was a reasonable compromise between obeying state law and the Fourth Amendment. *Id.* But the "clearly established" prong of the qualified immunity inquiry turns on whether the *constitutional right* was clearly established. *See Polanco*, 76 F.4th at 932–33 (rejecting an argument that a federal statute shielding officials from liability could have led a reasonable officer to undertake the challenged conduct "because the statute does not affect the scope or clarity of the underlying constitutional right, which is all that qualified immunity considers"). The Defendant officers cite no authority supporting their proposition that lack of clarity as to the constitutionality of applicable state laws factors into the qualified immunity analysis.

The Court denies Defendants' motion to dismiss the Section 1983 claim against the Defendant officers.

2. *Monell* liability

The Whites do not adequately allege that King County is subject to liability under *Monell*, 436 U.S. 658. Even though the Whites adequately allege a constitutional violation, a local government cannot be held vicariously liable for the discretionary actions of its individual officers. *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1073 (9th Cir. 2016) (en banc); *see also Black Lives Matter Los Angeles v. City of Los Angeles*, 113 F.4th 1249, 1259 (9th Cir. 2024). To be held liable, a local government must have a policy or custom that caused the violation of statutory or constitutional rights. *Castro*, 833 F.3d at 1073. If a plaintiff claims that a local government had a policy or custom of failing to train its officers, they must also allege that the policy or custom "reflects deliberate indifference to the constitutional rights of its inhabitants." *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 392 (1989)).

The Whites say that ambiguities in the General Orders Manual of the King County Sheriff's Office (KCSO GOM) are policies that caused the violation of their Fourth Amendment

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION TO DISMISS - 10

rights.[9] Dkt. ## 29, at 15–16, ¶¶ 95–98; 43 at 10–12. It is unclear if the Whites' theory is that the Defendant officers acted directly under a policy or that King County has a policy of failing to adequately train its officers. In any event, mere ambiguities in the KCSO GOM are not policies or customs under *Monell*. A policy or custom must be a "deliberate choice to follow a course of action . . . made from among various alternatives." *Castro*, 833 F.3d at 1075 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (plurality opinion)). To be liable, King County must have chosen to adopt a policy or custom that "was the moving force behind the constitutional violation." *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012) (citation omitted).

The Whites contend that ambiguities in the KCSO GOM's general overview of Fourth Amendment law[10] constitute policies under which the Defendant officers unconstitutionally entered their property and inquired into the ownership of their truck. The Whites assert that the KCSO GOM is unclear as to when there is an exception to a warrant requirement or what constitutes an "exigent circumstance." Dkt. # 43 at 10–11. That the KCSO GOM does not set forth a definitive guide as to the constitutionality of every action an officer might take, however, does not mean that King County has chosen to endorse every unconstitutional act. *See Gant v. Cnty. of Los Angeles*, 772 F.3d 608, 618 (9th Cir. 2014) (affirming a grant of summary judgment as to a *Monell* claim because an omission in a policy's guidelines alone is not enough to establish liability); *Price v. Sery*, 513 F.3d 962, 971 (9th Cir. 2008) (affirming in part a grant of summary

---

[9] The Court has taken judicial notice of the KCSO GOM. Dkt. # 47.

[10] The Whites point to KCSO GOM 5.00.025 and 5.00.055. Dkt. # 43 at 10. Section 5.00.025, titled "General Prohibition Against Entry Into Primary Residences," provides that for an officer with probable cause to enter a person's home to arrest them, the officer must "have either a warrant, consent, or show 'exigent circumstances.'" Dkt. # 29 at 15, ¶ 97 (link included in footnote 2). Section 5.00.055, titled "Searches," cites the Fourth Amendment and explains that "[t]here are, however, exceptions when searches and seizures may be made without warrants." *Id.* at 15–16, ¶ 98.

judgment because a policy requiring a "reasonable belief" instead of "probable cause" "was not, as written, contrary to the requirements of the Fourth Amendment"). At the pleading stage, the Whites must allege more than policies providing an overview of Fourth Amendment law. *See Mehta v. City of Sunnyvale*, 721 F. Supp. 3d 1041, 1049–50 (N.D. Cal. 2024) (dismissing a *Monell* claim because "nothing in the policy [] instructs officers to conduct un-*Mirandized* custodial interrogations"). To hold King County liable for its officers' interpretations of the Fourth Amendment would contravene the very foundation of *Monell* by holding King County directly liable for its employees' discretionary actions. *See* 436 U.S. at 691.

For the same reasons, KCSO GOM Section 12.040.020(1)(b) does not constitute a policy that caused violation of the Whites' Fourth Amendment rights. This provision merely codifies the substance of RCW 10.31.100(2)(d) by requiring officers to arrest a suspect who assaulted a "Family Household Member" within four hours. Dkt. # 44 at 13 (Exhibit B). The Whites say that by requiring an arrest within four hours, this provision caused the Defendant officers to unconstitutionally enter the Whites' property at 2:00 a.m. Dkt. # 43 at 11–12. But even if the Defendant officers interpreted this provision as requiring them to violate the Whites' Fourth Amendment rights, "[l]iability for improper custom may not be predicated on isolated or sporadic incidents." *Gant*, 772 F.3d at 618 (quoting *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)); *see also Segura v. City of La Mesa*, 647 F. Supp. 3d 926, 935–39 (S.D. Cal. 2022). The Whites do not allege that officers have consistently interpreted this provision as requiring them to make arrests within a suspect's home at unreasonable hours. *See Rogelio Reyes v. City of Santa Ana*, 2021 WL 3579412, at *9 (C.D. Cal. Apr. 21, 2021) (dismissing a *Monell* claim because the plaintiff had not sufficiently pleaded that a "violation of *Lundin* was a custom, practice or policy of the [local government].").

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION TO DISMISS - 12

The Court dismisses the Section 1983 claim against King County without prejudice and with leave to amend.

B.      Section 1985 Claim (Count IV)

The Whites do not state a claim under Section 1985(3). Dkt. # 29 at 24, ¶ 169.  Under Section 1985(3), a plaintiff must establish four elements:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."

*Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (quoting *United Bhd. of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 828–29 (1983)). The Whites fail to adequately allege the first two elements.

The Whites only make conclusory allegations that Defendants conspired to deprive them of their constitutional rights.  They allege that Defendants "conspired," "were on a mission," and had a "collective goal" to violate their rights.  Dkt. # 29 at 26, ¶¶ 179, 181, 183.  But the Court is "not required 'to accept as true a legal conclusion couched as a factual allegation.'"  *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  To adequately plead a Section 1985(3) claim, a plaintiff must allege that the defendants "reached an agreement" to violate their rights.  *Ziglar v. Abbasi*, 582 U.S. 120, 154 (2017).  Merely alleging that people acted together is not enough.[11]  *See Leishman v. Washington Att'y Gen.'s Off.*, 2023 WL 7166183, at *9–10 (W.D. Wash. Oct. 31, 2023).

---

[11] The Whites cite *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119 (10th Cir. 1994) to contend that they have adequately pleaded conspiracy because the facts supporting a conspiracy are difficult to discover at the pleading stage. Dkt. # 43 at 14. But in *Brever*, the whistleblower plaintiff alleged that the defendants made specific statements against whistleblowers at an employee meeting and subsequently forbade the plaintiff from going to the FBI. 40 F.3d at 1127–28. The Whites do not allege any similarly specific facts.

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION TO DISMISS - 13

Moreover, the second element of a Section 1985(3) claim requires a plaintiff to allege that the defendants' conspiracy to deprive the plaintiff of a legally protected right was motivated by animus against the protected class to which the plaintiff belongs. *Sever*, 978 F.2d at 1536. The Whites allege that they belong to a protected class of gun owners but do not allege any facts suggesting that Defendants were motivated by animus against gun owners. Dkt. # 29 at 25, ¶ 173.

The Whites also do not sufficiently allege that gun owners are a protected class. The Court need not take as true the Whites' allegation that they are "in a suspect class of owners of firearms" because this is a legal conclusion. *Id.*; Dkt. # 43 at 16; *Harris*, 682 F.3d at 1131. To qualify as a protected class under Section 1985(3), the class must have been designated by federal courts or Congress as "a suspect or quasi-suspect classification requiring more exacting scrutiny" or otherwise deserving "special protection." *Sever*, 978 F.2d at 1536 (quoting *Schultz v. Sundberg*, 759 F.2d 714, 718 (9th Cir. 1985)); *Canlis v. San Joaquin Sheriff's Posse Comitatus*, 641 F.2d 711, 720 (9th Cir. 1981). The Whites say that the Washington state legislature has targeted gun owners in recent years, but cite no federal court decision or legislation by Congress recognizing gun owners as a protected class. Dkt. # 43 at 15. The Whites also assert that gun owners are a protected class because a Second Amendment right to bear arms is well established. *Id.* at 14–15. But the recognition of a constitutional right is distinct from the recognition of a protected class. For example, to bring an Equal Protection Clause claim, a plaintiff must allege that they are "being denied a fundamental right while others are permitted to exercise such right." *Teixeira v. Cnty. of Alameda*, 822 F.3d 1047, 1052 (9th Cir. 2016), *on reh'g en banc*, 873 F.3d 670, 676 n.7 (9th Cir. 2017) (affirming dismissal of equal protection claim "for the reasons given in the panel opinion"); *see also Pena v. Lindley*, 898 F.3d 969, 986 (9th Cir. 2018). For the same reason that a bare Second Amendment claim "is not

cognizable under the Equal Protection Clause," *Teixeira*, 822 F.3d at 1052, the existence of a Second Amendment right to bear arms is not enough to state a claim under Section 1985(3), which expressly requires alleging a conspiracy to deprive "any person or class of persons" of the "equal protection of the laws."

Thus, the Court dismisses the Section 1985(3) claim without prejudice and with leave to amend.

C.   Conspiracy (Count V)

The Whites do not state a common law conspiracy claim. To establish conspiracy, a plaintiff must show that: "(1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the conspiracy." *Woody v. Stapp*, 189 P.3d 807, 810 (Wash. Ct. App. 2008) (citation omitted). The Whites make conclusory allegations that Defendants had "a mission" to conduct an unreasonable search, that they "orchestrat[ed] a plan of attack," and "directly or indirectly worked in concert." Dkt. # 29 at 27–28, ¶¶ 190, 193, 199. For the same reasons discussed *supra* Section III.B regarding the Section 1985(3) claim, the Whites do not adequately allege that Defendants conspired to deprive them of their Fourth Amendment rights.

It is also unclear whether the unlawful purpose of the alleged conspiracy was to violate the Whites' constitutional rights or to cause them emotional distress. *See* Dkt. # 29 at 27–28, ¶¶ 198–99. If the conspiracy claim is based on a theory that Defendants agreed to violate the Whites' constitutional rights, the parties have not addressed whether common-law claims can serve as a cause of action to vindicate federal constitutional rights. "Section 1983 was designed to afford plaintiffs a cause of action for constitutional violations on the part of local government bodies and other state officials." *Sintra, Inc. v. City of Seattle*, 935 P.2d 555, 562 (Wash. 1997), *abrogated on other grounds by Yim v. City of Seattle*, 451 P.3d 694 (Wash. 2019). Washington

does not have a state law analog to Section 1983, and Washington courts have declined to establish a cause of action for damages based on violations of the Washington state constitution, which may provide analogous rights. *Sisley v. City of Seattle*, 2014 WL 448656, at *2 (Wash. Ct. App. 2014) (citing *Blinka v. Washington State Bar Ass'n*, 36 P.3d 1094, 1102 (Wash. Ct. App. 2001)). If the conspiracy claim is based on a theory that Defendants agreed to inflict emotional distress upon the Whites, the complaint does not adequately allege that Defendants conspired for this purpose.

The Court dismisses the common law conspiracy claim without prejudice and with leave to amend.

D.   Negligence (Count VI)

The Whites do not state a common law negligence claim. To establish negligence, a plaintiff must show: "(1) the existence of a duty to the plaintiff, (2) a breach of that duty, (3) a resulting injury, and (4) the breach as the proximate cause of the injury." *Mancini v. City of Tacoma*, 479 P.3d 656, 664 (Wash. 2021) (citation omitted). When a plaintiff alleges a tort claim against a local government, the "public duty doctrine" requires the plaintiff to "show that the duty breached was owed to an individual and was not merely a general obligation owed to the public." *Id.* at 667 (quoting *Beltran-Serrano v. City of Tacoma*, 442 P.3d 608, 614 (Wash. 2019)). If the alleged duty is a legal obligation exclusively held by a local government rather than held "in common with private persons," the public duty doctrine shields the local government from liability. *Dold v. Snohomish Cnty.*, 649 F. Supp. 3d 1084, 1112 (W.D. Wash. 2022) (quoting *Munich v. Skagit Emergency Commc'n Ctr.*, 288 P.3d 328, 337 (Wash. 2012) (Chambers, J., concurring)).

As currently pleaded, the Whites' negligence claim is barred by the public duty doctrine. The Whites allege that Defendants have a duty to safeguard constitutional rights and that

Defendants breached this duty by unlawfully entering their property. Dkt. # 29 at 28–29, ¶¶ 205–10. And in response to Defendants' assertion that the public duty doctrine bars their negligence claim, the Whites' sole contention is that the doctrine does not apply because this case "involves Plaintiffs' constitutional rights." Dkt. # 43 at 17. But the Fourth Amendment as incorporated through the Fourteenth Amendment imposes duties on states, not private individuals. *Ballinger v. City of Oakland*, 24 F.4th 1287, 1300 (9th Cir. 2022) ("[T]o establish a deprivation of Fourth Amendment rights, the [plaintiffs] must allege the seizure was caused by state action."). Because a duty to abide by the Fourth Amendment is "imposed exclusively on government actors," it is not cognizable for a common law negligence claim.[12] *Dold*, 649 F. Supp. 3d at 1112–13. The Whites do not otherwise adequately plead that Defendants had a private duty that could serve as the basis for a negligence claim. It is true that "police, just like other people, must exercise ordinary reasonable care 'to refrain from causing foreseeable harm in interactions with others.'" *Mancini*, 479 P.3d at 668 (quoting *Beltran-Serrano*, 442 P.3d at 614). But it is unclear whether the Whites allege that the duty at issue is a duty not to arrest Killian, a duty not to enter another's property, or a different duty.

Even assuming that Defendants had a private duty, the Whites do not sufficiently allege injury. The Whites specifically allege negligent infliction of emotional distress, which requires the same elements for a general negligence claim. Dkt. # 29 at 28, ¶ 204; *Chaudhry v. Day*, 548 P.3d 279, 282 (Wash. Ct. App. 2024). But a plaintiff alleging negligent infliction of emotional distress must show that the injury was reasonable under the circumstances and can "be corroborated by objective symptomology." *Hegel v. McMahon*, 960 P.2d 424, 430 (Wash. 1998). To satisfy the objective symptomology requirement, "a plaintiff's emotional distress

---

[12] The Whites cite *Brutsche v. City of Kent*, but in that case the Washington Supreme Court declined to address a negligence claim. 193 P.3d 110, 122 (Wash. 2008); Dkt. # 43 at 18.

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION TO DISMISS - 17

must be susceptible to medical diagnosis and proved through medical evidence." *Id.* at 431. The Whites allege that Defendants caused them "great emotional distress," that they "do not feel safe and secure on their own private property" and that the violation of their constitutional rights was "emotionally traumatizing to the mind, body, and soul with physical symptomology." Dkt. # 29 at 29, ¶¶ 213–18. These general allegations of fear and emotional trauma are insufficient. *See Wharton v. Azenta Inc.*, 2024 WL 1209736, at *4 (W.D. Wash. Mar. 21, 2024) (dismissing a negligent infliction of emotional distress claim when the plaintiff alleged that he suffered "severe emotional and mental distress, anguish, humiliation, embarrassment, fright, mental and physical pain, discomfort and anxiety").

The Court dismisses the common law negligence claim without prejudice and with leave to amend.

E.    Request for Empanelment of a Grand Jury

This Court lacks authority to empanel a grand jury in plaintiffs' civil suit. *White v. Univ. of Washington*, 2024 WL 1241063, at *15 (W.D. Wash. Mar. 22, 2024).

The Court dismisses the request for empanelment of a grand jury with prejudice.

## IV
### CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendants' motion to dismiss. The Court DENIES the motion as to the Section 1983 claim against the Defendant officers. The Court GRANTS the motion as to all other claims. The Court DISMISSES the request for empanelment of a grand jury with prejudice. The Court DISMISSES the Section 1983 claim against King County and the Section 1985, conspiracy, and negligence claims without prejudice and with leave to amend. The Court GRANTS the Whites

leave until December 20, 2024 to file a second amended complaint (thus extending the prior deadline, Dkt. # 41); such leave is limited to the claims dismissed here.[13]

Dated this 2nd day of December, 2024.

John H. Chun
United States District Judge

---

[13] The Whites suggest that they will include constitutional challenges to RCW 10.31.100 and RCW 10.99.030 in their next amended complaint. Dkt. # 57 at 6. The Court only grants the Whites leave to address the constitutionality of these statutes insofar as they relate to the claims dismissed here. The Whites are not granted leave to add any new claims. They may move to do so if they wish.

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION TO DISMISS - 19