UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WHITE et al.,

          Plaintiffs,

    v.

KING COUNTY SHERIFF'S OFFICE et al.

          Defendants.

CASE NO. 2:23-cv-01761-JHC

ORDER

**I**
**INTRODUCTION**

This matter comes before the Court on Defendants' Motion to Dismiss (Dkt. # 123) and pro se Plaintiffs' Motions for Judicial Notice (Dkt. ## 129 & 130). The Court has reviewed the materials filed in support of and in opposition to the motion, the rest of the case file, and the governing law. Being fully advised, the Court DENIES Plaintiffs' Motions for Judicial Notice (Dkt. ## 129 & 130) and GRANTS in part and DENIES in part Defendants' Motion to Dismiss (Dkt. # 123).

ORDER - 1

## II
### BACKGROUND

As the facts in this case have been extensively detailed in prior orders and submissions, the Court declines to reiterate them here. Instead, given the nature of the motions, it focuses on the case's procedural history.

This case is a consolidated action against Defendant King County and Individual Defendants Tyler Hunt, Jeffrey Petrenchak, Enrico Donaglia, Steven Minters, and Mitzi Johanknecht, arising out of events that occurred on Plaintiffs' property in Kent, Washington on February 7, 2021. The first action was filed by Melissa and Roger White in November 2023. *See* No. 2:23-cv-01761-JHC, Dkt. # 1. The second action was filed by Killian and Damon White in February 2024. *See* No. 2:24-cv-00618-JHC, Dkt. # 1. On May 29, 2025, the two cases were consolidated into a single action before this Court: Case No. 2:23-cv-01761-JHC. Dkt. # 102.

The current operative complaints are Killian White's Fifth Amended Complaint (Dkt. # 118) and Melissa and Roger White's Fourth Amended Complaint (Dkt. # 119). As revealed by their titles, Plaintiffs' complaints have undergone numerous amendments throughout this action. *See generally* Dkt. Many of these amendments took place after Defendants moved to dismiss and Plaintiffs responded by moving for leave to amend, leading the Court to both grant leave to amend and strike Defendants' pending motion to dismiss as moot. *See id*. On one occasion, the amendment took place in response to the Court partially granting Defendants' motion to dismiss, resulting in the dismissal of all but one of Melissa and Roger White's claims—their § 1983 Fourth Amendment claim against the Individual Defendants in their individual capacities for illegally entering and searching the curtilage of Plaintiffs' home. *See* Dkt. # 64.

Despite the many rounds of amendments, Plaintiffs' core claims against Defendants remain largely unchanged. Plaintiffs allege: (1) violations of their Fourth and Fourteenth

ORDER - 2

Amendment rights under 42 U.S.C. § 1983; (2) conspiracy to deprive them of their Fourth and Fourteenth Amendment rights under 42 U.S.C. § 1985; (3) common law conspiracy under Washington State law; (4) negligence under Washington State law; and (5) violations of their rights to privacy under Article I § 7 of the Washington State Constitution. *See generally* Dkt. ## 118 & 119. Plaintiffs sue King County and the Individual Defendants in their official and individual capacities.[1] *See id.* And they seek declaratory relief, compensatory damages, and renumeration for "actual damages" associated with learning how to plead a case, travel, and spend time at a law library. *See* Dkt. ## 118 at 59–60; 119 at 48.

Defendants now move again to dismiss Plaintiffs' claims under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(c). Dkt. # 123. Plaintiffs oppose dismissal, *see* Dkt. ## 127 & 128, and separately move for judicial notice of various documents in support of their opposition. Dkt. ## 129 & 130. The Court considers these motions together.[2]

## III
### DISCUSSION

A.    Plaintiffs' Motions for Judicial Notice (Dkt. ## 129 & 130)

1.    Legal Standards

"Judicial notice under [Federal Rule of Evidence] 201 permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute.'" *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting Fed. R. Evid. 201(b)). An adjudicative fact is

---

[1] Per his response, Killian White is only asserting official-capacity claims against the Individual Defendants. *See* Dkt. # 128 at 20. The first page of the Fifth Amended Complaint, however, names each Individual Defendant "in both [their] official and individual capacity[.]" *See* Dkt. # 118 at 2.

[2] After these motions were filed, Plaintiffs moved to voluntarily dismiss Roger White as a party under Federal Rule of Civil Procedure Rule 41(a). *See* Dkt. # 139. The Court issued an Order on February 25, 2026, indicating its intention to grant dismissal of Roger White, subject to the condition that he appear for a deposition within 45 days. *See* Dkt. # 149. Because the issue of Roger White's dismissal has not been fully resolved at this time, the Court resolves the instant Motion as though Roger White is still a party. Should Roger White later be dismissed from this action, the Court will specify the terms of his dismissal in the order that dismisses him from the case.

ORDER - 3

distinct from a legislative fact—"adjudicative facts 'are simply the facts of the particular case' whereas legislative facts 'are those which have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body.'" *Lucero v. Wong*, 2011 WL 5834963, at *5 (N.D. Cal. Nov. 21, 2011) (citing Fed. R. Evid. 201, note to subdivision (a) for 1972 proposed rules). Legislative facts are beyond the scope of Rule 201, *see id.*, and courts regularly decline requests to take notice of them. *See, e.g.*, *Potter v. Meza*, 2026 WL 35276, at *6 (D. Ariz. Jan. 6, 2026), *reconsideration denied,* 2026 WL 183540 (D. Ariz. Jan. 23, 2026) (denying request to judicially notice a legislative fact); *Price v. Clifton*, 2024 WL 4720888, at *5 (C.D. Cal. Aug. 27, 2024), *report and recommendation adopted,* 2024 WL 4828700 (C.D. Cal. Nov. 19, 2024) (collecting cases of courts denying requests to judicially notice legislative facts).

As for judicially noticeable facts, courts may take notice of adjudicative facts that are "'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Khoja*, 899 F.3d at 999 (quoting Fed. R. Evid. 201(b)(1)–(2)). These include facts contained in public records, such as filings in other court cases. *See, e.g.*, *United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003) ("Courts may take judicial notice of some public records, including the records and reports of administrative bodies.") (citation and internal quotation marks omitted); *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) (concluding that courts may take judicial notice of filings in related state court actions). "But a court cannot take judicial notice of disputed facts contained in such public records[,]" especially if doing so would "defeat what would otherwise constitute adequately stated claims at the pleading stage." *Khoja*, 899 F.3d at 998–99. A court also need not take notice of irrelevant facts or materials unrelated to the issues before it. *See Potter*, 2026 WL 35276, at *5 (collecting cases).

ORDER - 4

2.      Analysis

Plaintiffs request that the Court take judicial notice of these documents: (1) "Statement of Defendant on Plea of Guilty" from *State v. Vailencour*, No. 21-1-01594-l KNT, (K. Cty. Sup Ct. Apr. 21, 2021); (2) Washington State Judiciary Committee Bill Analysis for ESSB 5635; (3) Certified Copies of King County Short Plat Nos. 1177032R–37R, 285098, 675007; (4) Articles of Incorporation of East Lake Morton Property Owners Association; and (5) King County Sheriff's Office General Orders Manual (KCSO GOM).  *See* Dkt. ## 129 at 1–2; 130 at 1–2. Defendants oppose judicial notice, arguing that Plaintiffs' Motions are procedurally improper. Dkt. # 123 at 8.

Although the Court disagrees with Defendants' basis for opposition, it still declines Plaintiffs' requests for judicial notice.[3]  The Court concludes that the adjudicative facts in requests 1, 3, and 4 above, while perhaps not subject to reasonable dispute, are not relevant to the issues raised by Defendants' Motion to Dismiss (Dkt. # 123).  As for requests 2 and 5, the Court concludes that these records contain legislative facts and thus are beyond the scope of Rule 201.[4] Accordingly, the Court need not take judicial notice of the records attached to Plaintiffs' Motions, and so it DENIES Plaintiffs' Motions for Judicial Notice (Dkt. ## 129 & 130).

---

[3] As the Court is not denying Plaintiffs' Motions on procedural grounds, it need not address Plaintiffs' request to strike the portions of Defendants' Reply that concern LCR 7(b)(2).  *See generally* Dkt. # 134.

[4] Beyond the scope of Rule 201, the Court may still consider these materials in its resolution of Defendants' Motion (Dkt. # 123).  *See, e.g.*, *Lucero*, 2011 WL 5834963, at *5 (noting that courts routinely consider legislative facts without a party requesting that they be judicially noticed).

ORDER - 5

B.       Defendants' Motion to Dismiss (Dkt. # 123)

1.       Legal Standards

a.       Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) governs a motion to dismiss for lack of jurisdiction. "Federal courts are courts of limited jurisdiction and may hear only those cases authorized by federal law." *Ohm v. California Nat. Res. Agency*, 2026 WL 95508, at *2 (E.D. Cal. Jan. 13, 2026); *see also Richardson v. United States*, 943 F.2d 1107, 1112 (9th Cir. 1991) ("Federal courts are courts of limited jurisdiction."). The party asserting jurisdiction bears the burden of establishing it. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). If a court determines that it lacks personal jurisdiction over the parties, or subject-matter jurisdiction over the action, it must dismiss the case for lack of jurisdiction. *See Ohm*, 2026 WL 95508, at *2 ("Without jurisdiction, the district court cannot decide the merits of a case or order any relief and must dismiss the case."); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

b.       Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) governs a motion to dismiss for failure to state a claim. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a) (a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief"). "A claim has facial plausibility when the plaintiff pleads

ORDER - 6

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

"When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true, and construe them in the light most favorable to the non-moving party." *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013). In a pro se action, the court must also "construe the pleadings liberally and [ ] afford the [pro se plaintiff] the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc)). But pro se or not, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). And a court can (and should) dismiss a complaint if it lacks a "cognizable legal theory" or "sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

            c.       Rule 12(c)

Federal Rule of Civil Procedure 12(c) governs a motion for judgment on the pleadings. The standards for a Rule 12(c) motion are "functionally identical" to those of a Rule 12(b)(6) motion: in reviewing a Rule 12(c) motion, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the non-moving party's favor. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (citation omitted); *see also Hines v. Youseff*, 914 F.3d 1218, 1227 (9th Cir. 2019). And a court should grant the motion if "the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that [they are] entitled to judgment as a matter

ORDER - 7

of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990).

       2.      Analysis

Defendants move to dismiss the currently operative Fifth and Fourth Amended Complaints (Dkt. ## 118 & 119) under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(c). *See* Dkt. # 123 at 1. They contend that: (1) Damon White should be dismissed as he is improperly attempting to represent Killian White as a pro se "agent"; (2) all of Killian White's claims should be dismissed, as they are *Heck*-barred, beyond this Court's jurisdiction, insufficiently pleaded, or otherwise improper; and (3) all of Melissa and Roger White's claims should be dismissed, as Melissa and Roger White lack standing and fail to adequately state a claim for relief. *Id*. at 1–2. Apart from their state-law claims for common-law conspiracy and negligence, Plaintiffs oppose dismissal of all claims. *See generally* Dkt. ## 127 & 128.

Because Plaintiffs "concede" that their negligence and common-law conspiracy claims are "moot for lack of pre-filing notice pursuant to RCW 4.96.020[,]" *see* Dkt. ## 127 at 19; 128 at 22, the Court GRANTS Defendants' Motion as to these claims and DISMISSES them without prejudice. As for the remaining claims, the Court considers them in turn below.

       a.      Dismissal of Damon White as a Plaintiff

Defendants argue that Damon White should be dismissed as a plaintiff because he is not a licensed attorney, he does not assert direct claims against Defendants, and he is not authorized to serve as an "agent" of Killian White under any federal, state, or local law. *See* Dkt. # 123 at 4–5. Killian and Damon White respond that Damon White may serve as Killian White's co-plaintiff because of RCW 11.125.340, 28 U.S.C. § 1654, and Damon White's contractual obligations

ORDER - 8

under Washington State law. *See* Dkt. # 128 at 5–14; *see also* Dkt. # 118 at 3 ("Damon White . . . is an agent by Power of attorney issued by Killian White").

But neither RCW 11.125.340, 28 U.S.C. § 1654, nor Washington contract law create a right to serve as a pro se "agent" on behalf of another pro se litigant in federal court. *See, e.g.*, RCW 11.125 (setting forth the requirements for power of attorney in probate and trust proceedings under Washington State law); 28 U.S.C. § 1654 (stating that parties may plead their cases personally or by counsel). And the Ninth Circuit has unequivocally (and repeatedly) established that non-attorneys *can* represent themselves in federal court but *cannot* represent others, absent very specific exceptions that are inapplicable here. *See, e.g.*, *C.E. Pope Equity Tr. v. United States*, 818 F.2d 696, 697 (9th Cir. 1987) ("Although a non-attorney may appear in propria persona in his own behalf, that privilege is personal to him. He has no authority to appear as an attorney for others than himself.") (internal citation omitted). District courts also regularly reject attempts by pro se plaintiffs to delegate legal functions to non-attorneys or bring claims on behalf of other persons. *See, e.g.*, *Hicks v. Dir. of Navos*, 2023 WL 6609592, at *1 (W.D. Wash. Sept. 22, 2023), *report and recommendation adopted,* 2023 WL 6599860 (W.D. Wash. Oct. 10, 2023) (dismissing complaint because the plaintiff "is not a lawyer and has no authority to represent persons other than himself"); *Amatrone v. Allstate Ins. Co.*, 2016 WL 1389763, at *1 (D. Nev. Apr. 7, 2016) (advising a pro se plaintiff "that he cannot delegate his right to represent himself to another person who is not a licensed attorney"); *Seco v. Homestead Apartments*, 2024 WL 3566592, at *1 (W.D. Wash. July 29, 2024) (collecting cases dismissing unlawful complaints filed by non-attorneys).[5]

---

[5] A pro se party or non-licensed attorney who attempts to practice law on behalf of others can also face criminal sanctions under Washington law. *See* RCW 2.48.190; *see also Seco*, 2024 WL 3566592, at *1 (explaining Washington's rules and the consequences for engaging in the unauthorized practice of law).

ORDER - 9

As Damon White is not a licensed attorney, his presence in this action as a pro se "agent" of Killian White is clearly improper.  The Court thus DISMISSES Damon White from the action with prejudice.

    b.   Dismissal of Killian White's Claims

      (1)  Killian White's Demand to Inform or Empanel a Grand Jury

The Fifth Amended Complaint contains a "demand to inform or for empanelment of a grand jury." *See* Dkt. # 118 at 10–12.  But as stated in this Court's prior order, district courts lack authority to empanel grand juries in civil suits. *See* Dkt. # 64 at 18 (citing *White v. Univ. of Washington*, 2024 WL 1241063, at *15 (W.D. Wash. Mar. 22, 2024)).  The Court thus DISMISSES Killian White's grand jury demand with prejudice.

      (2)  Personal Jurisdiction over the Individual Defendants

Defendants argue that the Court must dismiss Killian White's claims against the Individual Defendants for lack of personal jurisdiction.  Dkt. # 123 at 8.  They contend that Killian White did not comply with the federal rules governing service, as the Individual Defendants were never served in their personal capacities and the Fourth Amended Complaint was improperly served on Defendants by a non-neutral party—Melissa White. *Id*. at 8–10.

But Killian White states that he does not bring claims against the Individual Defendants in their personal capacities. *See* Dkt. # 128 at 20.[6]  And the Court does not find that Melissa White's service of Killian White's Fourth Amended Complaint violated the federal rules governing service, as Melissa White was not a party to Case No. 2:24-cv-00618-JHC at the time

---

[6] Despite this statement (and the absence of the phrase "individual capacity" in the case caption), the Court notes that the first page of the Fifth Amended Complaint does name each Individual Defendant "in both [their] official and individual capacity." *See* Dkt. # 118 at 2.  Thus, for the avoidance of any doubt, to the extent that Killian White asserts *any* claims against the Individual Defendants in their individual or personal capacities, such claims are DISMISSED for lack of personal jurisdiction.

ORDER - 10

she effected service[7] and Federal Rule of Civil Procedure 4 only prohibits service by parties. *See* Fed. R. Civ. P. 4(c). As Defendants do not cite any rule that would prohibit a non-party from effecting service just because they are partial towards the plaintiff or non-neutral towards the case's outcome, nor is the Court aware of any, it finds no reason to dismiss Killian White's Fifth Amended Complaint for lack of personal jurisdiction. It thus DENIES Defendants' request to do so.

(3)     Killian White's § 1983 Claims (Counts I and II)[8]

Defendants argue that Killian White's § 1983 claims should be dismissed because: (a) his claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); (b) the Individual Defendants cannot be sued in their official capacities for damages because they are not "persons" under § 1983; and (c) he fails to properly plead a § 1983 claim under *Monell v. Department of Social*

---

[7] Killian White's Certificate of Service states that service was initiated on April 8, 2025. *See* Dkt. # 90. Melissa White's first Motion to Consolidate (Dkt. # 71) was filed on December 31, 2024, and denied by the Court on February 18, 2025. Dkt. # 81. Melissa White's next Motion to Consolidate (Dkt. # 97), and the parties' Stipulated Motion for Case Consolidation (Dkt. # 101), were not filed until May 16, 2025 and May 29, 2025, respectively. *See* Dkt. And the Court did not grant consolidation of the two cases until May 29, 2025. Dkt. # 102. Accordingly, as of April 8, 2025—the day that Melissa White initiated service in Case No. 2:24-cv-00618-JHC—Melissa White was not a party to that action.

[8] The Court considers Plaintiffs' § 1983 claims (Counts I and II) together, as "[t]he Fourth Amendment is applicable against state and local governments by incorporation through the Fourteenth Amendment." *Mathis v. Cnty. of Lyon*, 2014 WL 1413608, at *4 (D. Nev. Apr. 11, 2014), *aff'd*, 591 F. App'x 635 (9th Cir. 2015); *see also Whitney v. City of Tacoma*, 2019 WL 7584279, at *2 (W.D. Wash. Dec. 19, 2019), *report and recommendation adopted*, 2020 WL 230963 (W.D. Wash. Jan. 14, 2020), *aff'd*, 2021 WL 4844215 (9th Cir. Oct. 18, 2021) ("The Fourth Amendment protects individuals against unreasonable searches and seizures by the government and is made applicable to the states by the Fourteenth Amendment."). The Court thus construes Counts I and II in the Fifth and Fourth Amended Complaints as a single claim against each Defendant—a § 1983 claim rooted in their alleged violations of Plaintiffs' Fourth Amendment rights (as applied to King County by the Fourteenth Amendment).

ORDER - 11

*Services of City of New York*, 436 U.S. 658 (1978).  *See* Dkt. # 123 at 5–7, 10–13.  The Court addresses each argument below.

(a)    Are Killian White's § 1983 claims *Heck*-barred?

Defendants argue that Killian White's § 1983 claims are *Heck*-barred, as success on these claims would necessarily imply the invalidity of his state court conviction.  Dkt. # 123 at 5–6.[9] Killian White responds that his § 1983 claims "do not negate any of the elements of the alleged crimes initially charged nor his conviction pursuant to the plea deal."  Dkt. # 128 at 14.

Whether a claim is *Heck*-barred is a "threshold question" that the Court must resolve before reaching the merits of the § 1983 claim.  *See Austin v. Wasden*, 2016 WL 10957236, at *2 (D. Idaho Dec. 15, 2016), *aff'd,* 707 F. App'x 903 (9th Cir. 2017).  The *Heck* doctrine provides:

> [I]n order to recover damages for [an] allegedly unconstitutional conviction . . . or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Heck*, 512 U.S. at 486–87.  In other words, "if a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed."  *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996) (per curiam).

---

[9] Defendants request that the Court take judicial notice of King County Superior Court Case No. 21-1-01593-2 KNT, attached as Exhibit 1 to Dkt. # 124.  *See* Dkt # 123 at 5.  Killian White opposes the request, arguing that the Exhibit contains inadmissible hearsay and facts subject to "reasonable dispute."  Dkt. # 128 at 15–16.  As a court may not take judicial notice of disputed facts contained in public records, *see Khoja*, 899 F.3d at 998–99, the Court declines Defendants' request to judicially notice all facts contained in the Exhibit.  Still, it concludes that there is no reasonable dispute that the Exhibit is a true and correct copy of Killian White's King County Superior Court case.  It thus takes judicial notice of the documents attached as Exhibit 1 to Dkt. # 124 for the fact of Killian White's prior conviction, including the crimes for which he was charged with and pleaded guilty to.

ORDER - 12

But *Heck* does not hold that all § 1983 claims stemming from an arrest are barred whenever a plaintiff is convicted based on that arrest. *See Heck*, 512 U.S. at 487 n.7; *see also Smithart*, 79 F.3d at 952 (concluding that *Heck* does not bar an excessive force claim, as success on such a claim would not necessarily invalidate the plaintiff's arrest or conviction). Instead, courts are instructed to "consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck*, 512 U.S. at 487. If not, "the action should be allowed to proceed, in the absence of some other bar to the suit." *Id*.

Here, Counts I and II of the Fifth Amended Complaint allege a variety of Fourth Amendment violations. *See* Dkt. # 118 at 27–44. While it is difficult for the Court to understand the specifics of each claim being advanced, the Court concludes that they can generally be sorted into three categories: (1) allegations that Defendants violated Killian White's Fourth Amendment right to be free from unreasonable seizures of his person; (2) allegations that Defendants violated Killian White's Fourth Amendment right to be free from unreasonable searches for evidence related to crimes that he may have committed; and (3) allegations that Defendants violated Killian White's Fourth Amendment right to be free from warrantless entries onto his property.

As for categories one and two, the Court finds that these claims are *Heck*-barred. The Fifth Amended Complaint alleges that Killian White was "unreasonably seized," as Defendants arrested him without a warrant (or a valid exception to the warrant requirement). *See generally* Dkt. # 118. In other words, it claims that Killian White was unlawfully arrested. But if the Court were to issue a favorable ruling on this claim, it would necessarily call into question the validity of Killian White's state court plea and eventual conviction, as the plea and conviction

ORDER - 13

were based on this allegedly unlawful arrest.[10]  The same is true for Killian White's unreasonable search claims: if the Court were to find that Defendants conducted an illegal search of Killian White's home or its curtilage to collect evidence to convict him of residential burglary, domestic violence, assault in the fourth degree, or any lesser crimes, such a ruling would necessarily invalidate any conviction that the state secured based on the results of that search.[11][12] The Court thus dismisses all of Killian White's unreasonable search and seizure claims as *Heck*-barred.[13]

---

[10] *See, e.g.*, *Hart v. Parks*, 450 F.3d 1059, 1065 n.5 (9th Cir. 2006) ("[*Heck*] generally bars a claim for false arrest under § 1983 if success in the false arrest suit would be inconsistent with an underlying conviction."); *Walton v. Cnty. of Sutter*, 2019 WL 3522463, at *3 (E.D. Cal. Aug. 2, 2019), *report and recommendation adopted,* 2019 WL 4166830 (E.D. Cal. Sept. 3, 2019) ("[P]laintiff is challenging his arrest for the same crime he was later convicted for [by plea]. In this regard, if plaintiff's arrest was proven to be invalid that would imply the invalidity of his conviction [by plea]."); *Zuegel v. Mountain View Police Dep't*, 2018 WL 1876948, at *7 (N.D. Cal. Apr. 19, 2018) (concluding that plaintiff's § 1983 claim for an unlawful arrest is *Heck*-barred because it would necessarily imply the invalidity of his prior conviction); *Guerrero v. Gates*, 442 F.3d 697, 703 (9th Cir. 2006) (same).

[11] *See, e.g.*, *Cook v. Torres*, 2021 WL 3604720, at *9 (N.D. Cal. Aug. 13, 2021) ("Plaintiff's allegations in this civil rights action, that he was illegally searched, would imply if successful that his arrest and plea were invalid."); *Shabazz v. Parris*, 2014 WL 2986485, at *4 (C.D. Cal. May 27, 2014), *report and recommendation approved,* 2014 WL 2986508 (C.D. Cal. July 2, 2014) ("Because Plaintiff is alleging that officers engaged in an illegal search and seizure in relation to the criminal charges for which he was ultimately indicted, his claims appear to be foreclosed by *Heck* because he has pleaded guilty in the Criminal Case.").

[12] To the extent that Killian White is attempting to argue that his unreasonable search claims are not *Heck*-barred because his plea and subsequent conviction did not rely on the results of Defendants' allegedly unlawful search, such a claim also fails. To sustain such a claim, Killian White "must prove not only that the search was unlawful, but that it caused him actual, compensable injury" which "does *not* encompass the 'injury' of being convicted and imprisoned." *Heck*, 512 U.S. at 487 n.7; *see also Schwartz v. City of Phoenix*, 83 F. Supp. 2d 1102, 1104 (D. Ariz. 2000) ("Plaintiff can seek damages for an allegedly unreasonable search and seizure that did not produce evidence introduced at his criminal trial" if he can also "establish that he has sustained actual, compensable injury other than the injury of conviction and imprisonment."). Killian White has not done this. *See generally* Dkt. # 118. Additionally, despite repeatedly referencing an illegal search, the Fifth Amended Complaint's only concrete claim is that Defendants illegally searched for his mother's vehicle. *See generally id*. As the results of this "search" provided strong evidence against Killian White for the crimes for which he was eventually convicted, the Court concludes that his plea and conviction were at least partially based on the results of this allegedly unlawful search.

[13] The Court also notes that Killian White could have raised these arguments in his state court proceedings. This further proves that his § 1983 claims are not independent of his state court conviction.

ORDER - 14

As for category three, the Court concludes that such claims are not *Heck*-barred.  Unlike his unreasonable search and seizure claims, Killian White's unlawful entry claims do not "necessarily imply the invalidity of his conviction or sentence[.]" *Heck*, 512 U.S. at 487.  These claims are thus independent of his plea and subsequent conviction, and so are not *Heck*-barred.

Accordingly, the Court GRANTS in part and DENIES in part Defendants' request to dismiss Killian White's § 1983 claims under *Heck v. Humphrey*.  Killian White's *Heck*-barred claims—his unreasonable search and seizure claims—are DISMISSED with prejudice.

> (b)  Can Killian White sue the Individual Defendants in their official capacities under § 1983?

Defendants argue that Killian White cannot bring official-capacity, § 1983 claims against the Individual Defendants because "they are not persons for purposes of § 1983."  Dkt. # 123 at 10.[14]  "[T]he Eleventh Amendment precludes a district court from asserting jurisdiction over claims against state officials sued in their official capacities[,]" as such officials are not "persons" under § 1983.  *Zuccaro v. Martinez Unified Sch. Dist.*, 2016 WL 10807692, at *6 (N.D. Cal. Sept. 27, 2016); *see also Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 69 n.24 (1997) ("State officers in their official capacities, like States themselves, are not amenable to suit for damages under § 1983.").  The Eleventh Amendment does not, however, bar all official-capacity, § 1983 actions against local government officials.  Instead, a plaintiff may sue local government officials in their official capacity under § 1983 so long as the "local government would be suable in its own name." *Monell*, 436 U.S. at 690 n.55.  In such a case, a court will treat the official-capacity claims as claims against the local government itself.  *See, e.g., Sierra v.*

---

[14] The Fifth Amended Complaint does not assert any claims against the Individual Defendants in their individual capacities.  *See* Dkt. # 128 at 20; *see also* Dkt. # 118 at 1.  The Court thus limits its analysis to whether Killian White can sue the Individual Defendants in their official capacities under § 1983.

ORDER - 15

*Dep't of Fam. & Child. Servs.*, 2016 WL 3751954, at \*10 (C.D. Cal. Feb. 26, 2016), *report and recommendation adopted,* 2016 WL 3771272 (C.D. Cal. July 12, 2016) ("Official capacity claims against municipal employees are treated as claims against the municipality under Section 1983.").

Here, the local government—King County—can be sued in its own name for damages under § 1983.  *See Monell*, 436 U.S. at 690 (holding that municipalities and other local government units are "persons" under § 1983).  Accordingly, Killian White can assert official-capacity claims against the Individual Defendants under § 1983.  It thus DENIES Defendants' request to dismiss Killian White's § 1983 claims on this basis.[15]

(c)      Does Killian White plead a § 1983 claim under *Monell*?

Defendants argue that the Fifth Amended Complaint fails "to properly plead a *Monell* claim."  Dkt. # 123 at 10.  Specifically, they argue that "Plaintiff fails to identify any 'custom or policy' that led to his alleged constitutional deprivation."  *Id*. at 12.  Killian White responds that the Fifth Amended Complaint adequately pleads a *Monell* claim because: (1) King County has a "standing custom" of abusing "the 'implied license' recognized by *Florida v. Jardines*, 569 U.S. 1 (2013)" and performing "'knock and talks' with the intent to arrest at any hour of the day or approach at unreasonable hours" in violation of *United States v. Lundin*, 817 F.3d 1151 (9th Cir. 2016); (2) King County has failed to appropriately train its deputies and update its policies to accord with *Lundin* and other key Fourth Amendment decisions; and (3) King County has failed to train its deputies on its policies related to on-call legal advice for search warrants.  Dkt. # 128

---

[15] Even though Killian White may bring these official-capacity claims against the Individual Defendants, "the real party in interest" for these claims is King County, not the Individual Defendants themselves.  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("[T]he real party in interest in an official-capacity suit is the governmental entity and not the named official[.]").  So in its analysis below, the Court treats these claims equivalently to his *Monell* claims against King County.

ORDER - 16

at 17–19.  While not mentioned in Killian White's Response, the Fifth Amended Complaint also seems to allege a *Monell* claim based on King County's policy of arresting domestic violence suspects within four hours pursuant to RCW 10.31.100(2)(d), RCW 10.99.030(2)(a), and KSCO GOM policies.

To state a § 1983 claim under *Monell*, a "plaintiff must establish: (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had [an official] policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'"  *Oviatt By & Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389–91 (1989)).  The Ninth Circuit has recognized three theories by which a plaintiff can hold a local government liable under *Monell*.

> First, a local government may be liable if execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict[ed] the injury. Second, a local government can fail to train employees in a manner that amounts to deliberate indifference to a constitutional right, such that the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. Third, a local government may be held liable if the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it.

*Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 802–03 (9th Cir. 2018) (citations and internal quotation marks omitted).

Here, Killian White attempts to state a *Monell* claim under the first and second theories. But he fails to do so, as the Fifth Amended Complaint does not adequately state a custom or policy that led to his alleged Fourth Amendment violation.

As for Killian White's *Lundin*-based arguments, the Court has already held that *Lundin*'s "knock and talk" exception does not apply to the facts of this case.  *See* Dkt. # 64 at 7.  Thus,

ORDER - 17

even assuming that Killian White has successfully proven a policy or custom based on King County officials regularly violating *Lundin*, failing to train officers on *Lundin*, ratifying *Lundin* violations by officers, or failing to update King County's laws and policies more generally based on *Lundin* and other recent Fourth Amendment cases, Killian White has not shown that such policies were the "moving force" behind his alleged Fourth Amendment violation. Killian White also fails to explain how King County's alleged failure to train its employees on the existence of on-call legal resources was a "moving force" in the officers entering his property without a warrant. Although this argument could perhaps support a claim for liability where the officers relied on a deficient warrant, it is unclear how increased knowledge regarding the availability of on-call legal resources would affect an individual's rights where, as here, the officers did not attempt to secure a warrant.

The Court also cannot conclude that RCW 10.31.100(2)(d), RCW 10.99.030(2)(a), and the accompanying KCSO GOM policies collectively constitute an "official policy" that amounts to "deliberate indifference" to Kilian White's constitutional right to be free from warrantless entries onto his property. Although the Court acknowledges that in practice, these laws may have contributed to Defendants' decision to enter Killian White's property without a warrant, it finds nothing in these laws that would command such an outcome. This is especially true when several other laws and KCSO GOM policies indicate that an officer may *not* enter a property without a warrant or exigent circumstances, even when they have good reason to do so. *See, e.g.*, KCSO GOM 5.00.025 ("Whether felony or misdemeanor, officers/deputies cannot enter a subject's home to arrest a person on probable cause alone. Officers/deputies must have either a warrant, consent, or show 'exigent circumstances.'"); KCSO GOM 5.11.005 ("The general rule is crime scene searches may not be conducted without a search warrant, except where there are exigent circumstances or lawful consent."). When viewed in context with the other laws, then,

ORDER - 18

the Court cannot conclude that RCW 10.31.100(2)(d), RCW 10.99.030(2)(a), and their accompanying policies collectively form an official policy that constitutes deliberate indifference to Killian White's Fourth Amendment rights.

As a result, the Court does not find that Killian White has plausibly alleged an official policy that was the moving force behind Defendants' alleged Fourth Amendment violations. As this is a required element of a § 1983 *Monell* claim, the Court concludes that Killian White has failed to state a claim for relief under § 1983. It thus GRANTS Defendants' Motion and DISMISSES all of Killian's White remaining § 1983 claims without prejudice.

(4)    Killian White's § 1985 Claims (Count III)

Defendants argue that Killian White's § 1985 claims should be dismissed because: (a) his claims are *Heck*-barred; (b) the Individual Defendants cannot be sued in their official capacities for damages because a § 1985 claim is "incompatible with *Monell* liability"; and (c) he fails to properly plead the elements of a § 1985 claim. *See* Dkt. # 123 at 6–7, 13. The Court addresses each argument below.

(a)    Are Killian White's § 1985 claims *Heck*-barred?

The parties essentially assert the same arguments for and against *Heck*-barring Killian White's § 1985 claims as they do for *Heck*-barring his § 1983 claims. *See generally* Dkt. ## 123 & 128. Courts are also instructed to apply *Heck* "equally" to claims brought under § 1983 and § 1985. *See Roberts v. City of Fairbanks*, 947 F.3d 1191, 1198 n.8 (9th Cir. 2020). The Court thus applies the same standards and logic from part III.B(2)(b)(3)(a), concluding that Killian White's § 1985 claims that are based on Defendants allegedly conspiring to conduct an unlawful arrest or illegal search are *Heck*-barred, as a favorable ruling on these claims would necessarily imply the invalidity of his state court conviction. In contrast, a favorable ruling on his other

ORDER - 19

claims—those that relate to Defendants allegedly conspiring to enter onto his property—would not necessarily invalidate his conviction so are not *Heck*-barred.

It thus GRANTS in part and DENIES in part Defendants' request to dismiss Killian White's § 1985 claims as *Heck*-barred.  Killian White's *Heck*-barred claims—his claims that Defendants conspired to conduct an unreasonable search and seizure—are DISMISSED with prejudice.

> (b)    Can Killian White sue the Individual Defendants in their official capacities under § 1985?

Defendants argue that Killian White cannot bring official-capacity, § 1985 claims against the Individual Defendants because: (1) such claims are "incompatible with *Monell* liability"; and (2) defendants sued in their official capacities "are not persons for purposes of § 1983."  Dkt. # 123 at 13.  But § 1985 claims are governed by § 1985, not the rules and caselaw governing § 1983 claims.  And the Ninth Circuit has held that unlike § 1983, entities *can* be held vicariously liable under § 1985 via "traditional principles of respondeat superior or 'policy and practice' principles[.]"  *See Scott v. Ross*, 140 F.3d 1275, 1284 (9th Cir. 1998).  Additionally, official-capacity claims *are* permitted under § 1983 so long as the local government is suable in its own name, *see* part III.B(2)(b)(3)(b) above, and courts routinely permit plaintiffs to bring (properly pleaded) § 1985 claims against local governments and their officials.  *See Gonzalez v. Santa Clara Cnty.*, 793 F. Supp. 3d 1093, 1108 (N.D. Cal. 2025) (collecting cases).

The Court thus DENIES Defendants' request to dismiss Killian White's official-capacity, § 1985 claims against the Individual Defendants on this basis.

> (c)    Does Killian White plead a § 1985 claim?

Defendants argue that Killian White has failed to plead a § 1985 claim because he has not alleged sufficient facts showing that he is a member of a protected class or that there was a

ORDER - 20

"conspiracy" among Defendants, both of which are required under 42 U.S.C. § 1985(3). Dkt. # 123 at 13; *see also* Dkt. # 131 at 5–6. Killian White responds that Defendants had an "official policy that invidiously discriminates against men involved in alleged Domestic violence incidents." Dkt. # 128 at 21.[16]

To state a claim for relief under § 1985(3), a plaintiff must show that there was a "conspiracy." *See Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (listing "conspiracy" as the first element of a § 1985(3) claim). To do so, a plaintiff must do more than state that the defendants conspired against them: they must plausibly allege that there was "an agreement to do an unlawful act [ ] between or among two or more separate persons." *Ziglar v. Abbasi*, 582 U.S. 120, 153 (2017).

Here, Killian White has failed to establish a "conspiracy," as the term is used under § 1985(3). Although the Fifth Amended Complaint alleges collective action, it contains no specific allegations that the Individual Defendants entered an agreement to commit an unlawful act. *See generally* Dkt. # 118 at 45–49. Even if it did, the intracorporate-conspiracy doctrine would block the claim, as "an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy" because the two agents are not separate "persons." *Ziglar*, 582 U.S. at 153; *see also Lobato v. L.V. Metro. Police Dep't*, 2023 WL 6620306, at *2 (9th Cir. Oct. 11, 2023) (endorsing the intracorporate-conspiracy doctrine). The Fifth Amended Complaint thus fails to plead a conspiracy, and so Killian White fails to state a claim for relief under § 1985(3). *See Sever*, 978 F.2d at 1536.[17]

---

[16] The Fifth Amended Complaint also appears to suggest a conspiracy based on Killian White's status as a male gun owner. *See* Dkt. # 118 at 48.

[17] As Killian White has not satisfied the first element of a § 1985(3) claim, the Court declines to address the other elements (and the parties' arguments on those elements).

ORDER - 21

Accordingly, the Court GRANTS Defendants' Motion and DISMISSES Killian White's remaining § 1985 claims with prejudice.

> (5)    Violation of Washington State Constitution Article I § 7 (Count VI)

Defendants argue that Killian White's claim for declaratory relief under Article I § 7 of the Washington State Constitution should be dismissed because it relies on "an improper cause of action." Dkt. # 123 at 14. Killian White responds that "there are no remedies" for Article I § 7 violations "so therefore [an Article I § 7 claim for] declaratory relief is permissible[.]" Dkt. # 128 at 22.

Article I § 7 provides: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." Wash Const. art I, § 7. But despite this constitutional guarantee, Washington courts have not recognized a constitutional cause of action under this provision. *See Reid v. Pierce Cnty.*, 136 Wash. 2d 195, 213–214, 961 P.2d 333 (1998) (declining to recognize a constitutional cause of action for violations of a person's right to privacy under Article I § 7). As noted in a recent state court decision, absent a recognized cause of action under the Washington Constitution, a court should only "'construct a constitutional cause of action'" if the party presents a "'reasoned or principled basis'" and establishes "'why a constitutional cause of action is more appropriate than the common law cause of action which already exists.'" *Henry v. Washington Dep't of Fish & Wildlife*, 35 Wash. App. 2d 1013, at *8 (2025) (quoting *Reid*, 136 Wash. 2d at 213–214). And in practice, "Washington courts have consistently rejected invitations to establish a cause of action for damages based on constitutional violations without the aid of augmenting legislation." *Id*. at *9.

In light of this precedent, the Court does not find that Killian White has a valid cause of action under Article I § 7 to sustain his claims. As in *Reid*, Killian White's assertion that King

ORDER - 22

County violated his right to privacy under Article I § 7 appears well-suited for a privacy suit at common law. The Fifth Amended Complaint also does not assert a "reasoned or principled basis upon which to construct a constitutional cause of action, nor [does it] establish[ ] why a constitutional cause of action is more appropriate than the common law cause of action which already exists." *Reid*, 136 Wash. 2d at 213–214. Killian White likewise fails to explain why this Court should recognize a constitutional cause of action under Article I § 7, despite the Washington Supreme Court explicitly declining to recognize the same cause of action in *Reid*.[18]

As the Court declines to recognize a cause of action under Article I § 7 of the Washington State Constitution, the Court does not find that Killian White has a cognizable cause of action to support his Article I § 7 claim. Without a cause of action, this Court lacks jurisdiction over the claim, and so it must be dismissed. *See Araiza v. United States*, 2023 WL 5505030, at *3 (C.D. Cal. July 18, 2023) ("Without a viable cause of action, the Court lacks subject matter jurisdiction over Plaintiffs' claims."); *see also Davis v. Passman*, 442 U.S. 228, 236–41 (holding that a plaintiff must have a valid cause of action to bring a claim in federal court). Accordingly, the Court GRANTS Defendants' Motion and DISMISSES Killian White's claims under Article I § 7 without prejudice.

> c. Dismissal of Some of Melissa and Roger White's Claims

> (1)   Melissa and Roger White's § 1983 Claims (Counts I & II)

Defendants argue that Melissa and Roger White's § 1983 claims should be dismissed because: (a) Melissa and Roger White lack injury-in-fact to confer Article III standing; (b) the

---

[18] Killian White's arguments on declaratory relief, *see* Dkt. # 128 at 22–24, do not address the threshold deficiency of his claim—the lack of a cause of action. And regardless of whether there are other remedies available, a plaintiff cannot bring a claim for declaratory relief if he lacks an underlying cause of action. *See Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1222–23 (9th Cir. 1998) ("A lawsuit seeking federal declaratory relief must first present an actual case or controversy within the meaning of Article III, section 2 of the United States Constitution.").

ORDER - 23

Fourth Amended Complaint does not plead a proper § 1983 claim against the Individual Defendants in their individual capacities; and (c) the Fourth Amended Complaint does not plead a proper § 1983 claim against any Defendant under *Monell. See* Dkt. # 123 at 16–25.  The Court addresses each argument below.

(a)    Do Melissa and Roger White have standing to bring their § 1983 claims?

Defendants argue that the Court must dismiss Melissa and Roger White's claims because they have failed to plead injury-in-fact and thus lack Article III standing.  Dkt. # 123 at 16.[19] Melissa and Roger White respond that: (1) Defendants' Motion is a veiled (and procedurally improper) motion for reconsideration; and (2) Melissa and Roger White have satisfied their burden of demonstrating injury-in-fact based on the injury of "Defendants enter[ing] their curtilage/home with the intent to arrest and search[ing] their license plate which was outside of plain view" in violation of the Fourth Amendment.  Dkt. # 127 at 5–8.

As explained by the Ninth Circuit:

Article III limits the jurisdiction of federal courts to "cases" and "controversies." Federal courts are presumed to lack jurisdiction, unless the contrary appears affirmatively from the record. Standing is an essential, core component of the case or controversy requirement. The plaintiff has the burden of establishing standing, and the first element it must show is that it has suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual and imminent, not "conjectural" or "hypothetical."

*Table Bluff Rsrv. (Wiyot Tribe) v. Philip Morris, Inc.*, 256 F.3d 879, 882 (9th Cir. 2001) (citations and internal quotation marks omitted).  Because standing is a constitutional prerequisite for federal jurisdiction, Rule 12(b)(1) motions to dismiss for lack of subject-matter

---

[19] Because Defendants move to dismiss for lack of standing only on injury-in-fact grounds, the Court limits its analysis to this element of standing.

ORDER - 24

jurisdiction, including for lack of standing, may be brought at any time.[20]  Likewise, if at any time a court determines that a party lacks standing, it must dismiss the claim (or action) for lack of subject-matter jurisdiction.  *See* Fed. R. Civ. P. 12(h)(3).  Such a dismissal can be by motion or sua sponte, and can occur even if the court originally thought it had jurisdiction.[21]

Because standing can be raised at any time, Defendants' Rule 12(b)(1) Motion to Dismiss for lack of standing is not untimely or otherwise improper.[22]  The Court thus proceeds to the standing question raised by Defendants' Motion: does the Fourth Amended Complaint plead injury-in-fact such that Melissa and Roger White have Article III standing to bring their § 1983 claims?

The court resolves this question in the affirmative.  While the Court agrees with Defendants that the Fourth Amended Complaint does not plead actual injury, it does find that the Complaint successfully pleads constitutional injury.  *See* Dkt. # 64 at 5–8 (concluding that Melissa and Roger White adequately allege a Fourth Amendment violation).[23]  As "[i]mpairments to constitutional rights are generally deemed adequate to support a finding of

---

[20] *See, e.g.*, *Herson v. City of Reno*, 2012 WL 3648938, at *2 (D. Nev. Aug. 23, 2012), *aff'd,* 622 F. App'x 635 (9th Cir. 2015) ("A motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) may be raised at any time[.]");*City of Oakland v. Lynch*, 798 F.3d 1159, 1163 (9th Cir. 2015) ("Because constitutional standing implicates jurisdiction, a challenge to constitutional standing is one which [courts] are required to consider, even [if] raised for the first time on appeal.") (citations and internal quotation marks omitted).

[21] *See, e.g.*, *Skyware, Inc. v. Abramson*, 2012 WL 1980258, at *1 (N.D. Cal. June 1, 2012) ("It is incumbent on the court to evaluate whether a litigant has standing, and the court may at any time dismiss claims sua sponte if the court determines that a litigant lacks standing."); *Brooklyn Patriots of Los Angeles, Inc. v. City of Reno*, 2012 WL 3655296, at *3 n.3 (D. Nev. Aug. 23, 2012), *aff'd sub nom. Herson v. City of Reno*, 622 F. App'x 635 (9th Cir. 2015) ("Lack of standing may be raised at any time, including by the court sua sponte if the parties fail to raise the issue.").

[22] The Court also notes that contrary to Melissa and Roger White's assertion, the Court never "ruled that Plaintiffs do have Article III standing[,]" *see* Dkt. # 127 at 5–6; it merely discharged its prior order to show cause (Dkt. # 23).  *See generally* Dkt. # 31.

[23] The Court notes that while it *has* ruled that Melissa and Roger White have plausibly alleged a Fourth Amendment violation, it *has not* "ruled that [a] fourth amendment violation did in fact occur[.]" *See* Dkt. # 127 at 7.

ORDER - 25

'injury' for purposes of standing[,]" the Court concludes that Melissa and Roger White have adequately alleged injury-in-fact to support their § 1983 Fourth Amendment claims. *Council of Ins. Agents & Brokers v. Molasky-Arman*, 522 F.3d 925, 931 (9th Cir. 2008) (quoting *Doe v. Sch. Bd. of Ouachita Par.*, 274 F.3d 289, 292 (5th Cir.2001)); *see also Est. of Macias v. Ihde*, 219 F.3d 1018, 1028 (9th Cir. 2000) ("A plaintiff may prove a violation of § 1983 without demonstrating that the deprivation of his or her constitutional rights caused any actual harm."); *George v. City of Long Beach*, 973 F.2d 706, 708 (9th Cir. 1992) ("In this Circuit, nominal damages must be awarded if a plaintiff proves a violation of [their] constitutional rights.").

In reaching this conclusion, however, the Court reiterates that Melissa and Roger White have standing to bring claims rooted only in their *personal* rights under the Fourth Amendment; they may *not* bring claims that seek to vindicate Killian White's Fourth Amendment rights. *See Moreland v. L.V. Metro. Police Dept.*, 159 F.3d 365, 369 (9th Cir. 1998) (quoting *Alderman v. United States*, 394 U.S. 165, 174 (1969)) ("Fourth Amendment rights are personal rights which . . . may not be vicariously asserted."). It also notes that if Melissa and Roger White cannot prove actual harm, their ability to recover damages for any proved constitutional violations will be limited to nominal damages.[24]

The Court thus DENIES Defendants' request to dismiss Melissa and Roger White's § 1983 claims for lack of Article III standing, subject to the caveats above.

---

[24] While the Court believes it would be improper to strike Melissa and Roger White's request for compensatory damages at this time, it does note that the lack of actual (i.e., nonconstitutional) injuries pleaded in the Fourth Amended Complaint, combined with Plaintiffs' statements that Melissa and Roger White were sleeping and unaware of the intrusion, cast serious doubts as to whether Melissa and Roger White will be able to recover more than nominal damages even if they succeed on the merits of their § 1983 claim. *See generally* Dkt. # 119.

ORDER - 26

(b)    Does the Fourth Amended Complaint plead a proper
§ 1983 claim against each Individual Defendant in their
individual capacity?

Defendants make various arguments in favor of dismissing Melissa and Roger White's personal-capacity claims against the Individual Defendants.  First, Defendants contend that dismissal is warranted because the Fourth Amended Complaint does not identify which officer conducted the allegedly unlawful search, nor specifically identify what each Defendant officer did to violate their rights.  Dkt. # 123 at 19.  The Court disagrees.  While it acknowledges that some key facts are missing from the Fourth Amended Complaint, when viewed in the light most favorable to Plaintiffs, the Complaint plausibly alleges that all four officers participated in the purportedly unlawful search.  The Court also believes that the specific identity of the officer who conducted the search, while important for the ultimate resolution of this case, is unneeded for the Complaint to plausibly allege a § 1983 Fourth Amendment claim against the Defendant officers.[25]  The Court thus DENIES Defendants' request to dismiss Melissa and Roger White's § 1983 claims on this ground.

Second, Defendants argue that Defendant Johanknecht should be dismissed, as she was not present during Killian White's arrest and respondeat superior liability is unavailable under § 1983.  Dkt. # 123 at 20.  The Court agrees.  The Fourth Amended Complaint does not allege any facts showing that Defendant Johanknecht directly participated in the allegedly unlawful entry and search of Plaintiffs' property.  *See generally* Dkt. # 119.  And contrary to Melissa and Roger White's assertion, *see* Dkt. # 127 at 18, supervisors sued in their personal capacities under § 1983 cannot be held liable for the actions of their subordinates unless they directly participated in the violation, directed the violation, or knew the violation was occurring and failed to stop it—

---

[25] The Court also notes that this information is likely held by Defendants, and thus is unlikely to be learned by Melissa and Roger White if they cannot conduct discovery on this issue.

ORDER - 27

none of which apply here. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("There is no respondeat superior liability under section 1983.").[26] Additionally, any claims arising out of Defendant Johanknecht's alleged failure to train deputies would be based on actions taken in her official capacity (discussed in part III.B(2)(c)(1)(c) below), not based on actions taken in her personal capacity. The Court thus GRANTS Defendants' Motion and DISMISSES all individual-capacity claims against Defendant Johanknecht with prejudice.

Finally, Defendants argue that even if Melissa and Roger White specify an individual deputy, their § 1983 claims still fail because "this case originates from the improperly pleaded curtilage of the home." Dkt. # 123 at 20. They also argue that "even if this Court concludes there was an entry into the curtilage of the home," it should still dismiss Melissa and Roger White's claims because Defendants are entitled to qualified immunity. *Id.* at 23. But the Court has already addressed these issues, concluding in its prior Order that Melissa and Roger White have plausibly alleged both that Defendants entered their home's curtilage and that qualified immunity does not apply at this stage of the proceedings. *See* Dkt. # 64 at 5–10. And the Court is not inclined to revisit previously decided issues on a motion for reconsideration brought under the guise of a motion to dismiss.[27] It thus DENIES Defendants' request to dismiss Melissa and Roger White's remaining personal-capacity claims against the Individual Defendants.

---

[26] When properly quoted, Melissa and Roger White's cited case says the same: "Respondeat superior liability does not lie in Section 1983; a supervisor is only liable under Section 1983 'if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.'" *Ruelas v. Cnty. of Alameda*, 2021 WL 12144269, at *14 (N.D. Cal. June 24, 2021), *rev'd*, 108 F.4th 1208 (9th Cir. 2024) (quoting *Taylor*, 880 F.2d at 1045).

[27] The Court also clarifies that its ruling (like its Order at Dkt. # 64 concerning the amended complaint) is limited to the question of whether the allegations in the Fourth Amended Complaint are "plausible."

ORDER - 28

(c)    Does the Fourth Amended Complaint plead a proper
§ 1983 claim against any Defendant under *Monell*?

Defendants argue that Melissa and Roger White's official-capacity, § 1983 claims should be dismissed for the same reasons discussed in part III.B(2)(b)(3)(c) above—failure to establish an official custom or policy to support their *Monell* claim. Dkt. # 123 at 26. Melissa and Roger White respond by listing the same official policies and customs that the Court rejected in its prior Order (Dkt. # 64) and in part III.B(2)(b)(3)(c) above. *See generally* Dkt. ## 119 at 18–19, 26–35; 127 at 12–15. Accordingly, the Court concludes that the Fourth Amended Complaint fails to state a § 1983 claim against Defendants under *Monell*. So it GRANTS Defendants' Motion and DISMISSES Melissa and Roger White's § 1983 claims against King County and the Individual Defendants in their official capacities without prejudice.

(2)    Melissa and Roger White's § 1985 Claims (Counts III)

Defendants argue that Melissa and Roger White have failed to plead a § 1985 claim because they have not alleged discriminatory animus or specific allegations of a conspiracy to deprive them of their constitutional rights. Dkt. # 123 at 25.[28] The Court agrees. The Fourth Amended Complaint does not allege that Defendants specifically conspired to deprive Melissa and Roger White of *their* rights. *See generally* Dkt. # 119. Instead, it states that Defendants conspired to deprive Killian White of *his* rights, which incidentally resulted in a violation of Melissa and Roger White's rights. *Id*. But a conspiracy to deprive one person of their rights does not mean that there was also a conspiracy to deprive a different person of their rights. Additionally, the Court has already concluded that Killian White has not established the

---

[28] Defendants also argue that Melissa and Roger White lack standing to bring this claim. But for the same reasons discussed in part III.B(2)(c)(1)(a) above, the Court rejects this argument.

ORDER - 29

existence of a "conspiracy," and Melissa and Roger White plead no additional facts to rebut this conclusion. *See* part III.B(2)(b)(4)(c) above; *see also* Dkt. # 119.

The Fourth Amended Complaint thus fails to establish the core premise of a § 1985(3) claim—the existence of a conspiracy to deprive Melissa and Roger White of their constitutional rights. The Court thus GRANTS Defendants' Motion and DISMISSES Melissa and Roger White's § 1985 claims with prejudice.

> (3)    Violation of Washington State Constitution Article I § 7 (Count VI)

The parties advance the same arguments for and against dismissal of Melissa and Roger White's Article I § 7 claims as they did for Killian White's Article I § 7 claims. *See generally* Dkt. ## 123 at 26–27; 127 at 19–20. Thus, for the same reasons set forth in part III.B(2)(b)(5) above, the Court concludes that Melissa and Roger White lack a cause of action to support their Article I § 7 claims. It thus GRANTS Defendants' Motion and DISMISSES Melissa and Roger White's claims under Article I § 7 of the Washington State Constitution without prejudice.

> (4)    Melissa and Roger White's Request for Attorney Fees

The Fourth Amended Complaint requests "renumeration for actual damages in the amount of [$]69,200 for time spent learning how to plead a case, travel and spend time at the law library, and paralegal course[.]" Dkt. # 119 at 48. Melissa and Roger White also clarify in their Response that "[t]he $69,200 amount [in the Complaint] is a vestige of Plaintiffs desire to receive attorneys fees under 42 U.S.C. § 1988, however, that statute does not apply to Pro Se Plaintiffs." Dkt. # 127 at 7. Based on these representations, and the fact that pro se litigants may

not recover attorney fees,[29] the Court STRIKES this request from the Fourth Amended Complaint.

3.      Leave to Amend

Defendants request that the Court dismiss the entire action with prejudice and without leave to amend.  *See* Dkt. # 123 at 27.  In contrast, Plaintiffs request that if the Court should dismiss any of their claims, "Plaintiffs should be granted leave to amend where applicable."  Dkt. # 128 at 24; *see also* Dkt. # 127 at 20 (asking the Court to "provide Plaintiffs with opportunity to amend where necessary").

When dismissing a complaint (or any claim in it), a court has three options: (1) dismissal without prejudice and with leave to amend; (2) dismissal without prejudice and without leave to amend; and (3) dismissal with prejudice and without leave to amend.  Because "dismissal with prejudice is a determination on the merits[,]" a claim should typically be dismissed with prejudice only if the court has analyzed the claim's merits.  *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 962 (9th Cir. 2006); *see also Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) (collecting cases on dismissal with versus without prejudice).  Otherwise, dismissal without prejudice, and with or without leave to amend, is more appropriate.

As for leave to amend, Federal Rule of Civil Procedure 15(a) provides that district courts "should freely give leave [to amend] when justice so requires."  But a "district court may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ..., [and] futility of amendment.'"  *Carvalho v. Equifax*

---

[29] *See, e.g.*, *Gonzalez v. Kangas*, 814 F.2d 1411, 1412 (9th Cir. 1987) (holding that pro se plaintiffs in § 1983 actions are not entitled to an award of attorney fees); *Konkol v. Oakwood Worldwide Loc., LLC*, 2015 WL 46177, at *4 (C.D. Cal. Jan. 2, 2015) (striking a pro se plaintiff's request for attorney fees because "pro se litigants may not recover attorney's fees").

*Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  This is true even if the litigant is pro se: where "it is absolutely clear that no amendment can cure the defect" and the litigant has been given "notice of the complaint's deficiencies and an opportunity to amend," a court may dismiss the claim or action without leave to amend.  *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

Here, the Court concludes that dismissal with prejudice is warranted for only some of Plaintiffs' claims.  The Court engaged in a full merits analysis of these issues: Damon White's role as a co-plaintiff, Killian White's demand for a grand jury, and the validity of Plaintiffs' § 1983 and § 1985 claims.  The Court also concludes that, except for Plaintiffs' § 1983 *Monell* claims, no amendment could cure the defects identified in this Order.  Plaintiffs have also been given substantial notice and many opportunities to cure these defects but to no avail.  *See generally* Dkt.  Accordingly, the Court finds dismissal with prejudice and without leave to amend appropriate for these claims.  As for all other claims, the Court finds dismissal without prejudice more appropriate.

But even for the claims dismissed without prejudice, the Court does not find leave to amend warranted.  Although pro se plaintiffs are entitled to leniency, this leniency does not confer a right to endless opportunities for amendment.  *See Altheide v. Nevada ex rel. Dep't of Corr.*, 2025 WL 3902299, at *3 (D. Nev. Aug. 22, 2025), *report and recommendation adopted sub nom. Altheide v. Nevada*, 2025 WL 3496792 (D. Nev. Dec. 4, 2025) (collecting cases denying leave to amend to pro se plaintiffs).  Where, as here, the cases have been pending for years, Plaintiffs have had many opportunities to amend their complaints, they continue to advance rejected arguments in amended pleadings, and both the Court and Defendants have invested significant resources in identifying the complaints' deficiencies and providing guidance for potential paths forward, the Court cannot find that the interests of justice allow further

ORDER - 32

amendment.  The Court thus DENIES Plaintiffs leave to amend for all claims dismissed in this Order.

## IV
### CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiffs' Motions for Judicial Notice (Dkt. ## 129 & 130), GRANTS in part and DENIES in part Defendants' Motion to Dismiss (Dkt. # 123), and ORDERS:

(a) The Fifth Amended Complaint (Dkt. # 118) is DISMISSED.  Damon White is DISMISSED WITH PREJUDICE.  Killian White's demand to empanel or inform a grand jury, *Heck*-barred § 1983 claims, and all § 1985 claims are DISMISSED WITH PREJUDICE.  Killian White's non-*Heck*-barred § 1983 claims, common-law conspiracy claims, negligence claims, and claims under Article I § 7 of the Washington State Constitution are DISMISSED WITHOUT PREJUDICE.

(b) The Fourth Amended Complaint (Dkt. # 119) is DISMISSED IN PART.  Melissa and Roger White's § 1983 claims against Defendant Johanknecht in her individual capacity are DISMISSED WITH PREJUDICE, as are all of Melissa and Roger White's § 1985 claims.  Melissa and Roger White's § 1983 official-capacity claims, common-law conspiracy claims, negligence claims, and claims under Article I § 7 of the Washington State Constitution are DISMISSED WITHOUT PREJUDICE. Melissa and Roger White's request for attorney fees is STRICKEN.

(c) Plaintiffs' requests for leave to amend are DENIED.

(d) The only remaining claims in this action are Melissa and Roger White's § 1983 claims against Defendants Hunt, Petrenchak, Donaglia, and Minters, in their individual capacities, for their alleged violations of Melissa and Roger White's Fourth

ORDER - 33

Amendment rights to be free from unlawful entries and unreasonable searches of their home's curtilage.

Dated this 25th day of February, 2026.

John H. Chun
United States District Judge

ORDER - 34